CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
December 19, 2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| Josef Christian Schwaneberg, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:24-cv-00039 |
| | ) | |
| Cyrilia Lopez, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

On December 6, 2024, this court entered a memorandum opinion and order granting Petitioner Christian Schwaneberg's ("Petitioner") petition for return of the minor child, CFS, pursuant to the 1980 Hague Convention on the Civil Aspects of International Child Abduction ("the Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.* (Dkts. 67, 68.) Four days later, this court issued a return order with conditions directing the return of CFS to South Korea on December 20, 2024. (Dkt. 70.)

Respondent Cyrilia Lopez ("Respondent") filed a motion to stay enforcement of this court's judgment pending appeal on December 18, 2024. (Mot. to Stay Enforcement of J. Pending Appeal (Dkt. 72) [hereinafter "Mot."].) At the court's direction, (*see* Dkt. 73), Petitioner filed a response in opposition to the motion that same day. (Pet'r's Resp. in Obj. to Mot. to Stay (Dkt. 75) [hereinafter "Resp."].) Respondent filed a reply on December 19, 2024. (Dkt. 77.) The motion is now fully briefed and ripe for review. For the reasons that follow, the court denies the motion.

## I. Standard of Review

In *Chafin v. Chafin*, 568 U.S. 165 (2013), the Supreme Court addressed motions to stay pending appeals in Hague Convention cases. The Supreme Court directed lower courts to "apply the four traditional stay factors" in deciding whether to stay a return order:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 179 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Because "[i]n every case under the Hague Convention, the well-being of a child is at stake," analysis under the four factors "ensures that each case will receive the individualized treatment necessary for appropriate consideration of the child's best interests." *Id.* The factors "should be considered on a sliding scale so that a stronger showing on one factor may excuse a lesser showing on others." J. Garbolino, Fed. Jud. Ctr., *The 1980 Hague Convention on the Civil Aspects of International Child Abduction: A Guide for Judges* 212 (3d ed. 2023)).

Because "multiple relocations of [a] child" may be "detrimental to his well-being," courts issuing a return order under the Hague Convention "should seriously consider the possibility of staying that order pending appeal." *Didon v. Castillo*, 838 F.3d 313, 319 n.12 (3d Cir. 2016). Ultimately, however, the Supreme Court has discouraged granting stays "as a matter of course," emphasizing that "routine stays . . . would conflict with the Convention's mandate of prompt return to a child's country of habitual residence." *Chafin*, 568 U.S. at 178. The Court has further stressed that courts "can and should take steps to decide these cases as

- 2 -

expeditiously as possible, for the sake of the children who find themselves in such an unfortunate situation." *Id.* at 179.

## II. Discussion

### A. Likelihood of Success

Respondent argues that a future appeal would "present a clear, discrete issue of law for appellate review: Whether South Korea could be the child's habitual residence when it is undisputed that each parent had announced specific plans to move, before the date of retention, to a different country." (Mot. at 2.) However, a child's habitual residence is a mixed question of law and fact. *Monasky v. Taglieri*, 589 U.S. 68, 84 (2020). The Fourth Circuit reviews the court's decision on that question for clear error. *Maxwell v. Maxwell*, 588 F.3d 245, 253 (4th Cir. 2009); *see also Nowlan v. Nowlan*, No. 21-1965, 2022 WL 34141, at *1 (4th Cir. Jan. 4, 2022), *cert. denied*, 142 S. Ct. 1390, 212 L. Ed. 2d 338 (2022). So, even if the Fourth Circuit would have decided that South Korea is not CFS's habitual residence, it would reverse only if it were "left with a definite and firm conviction that a mistake has been committed." *Helton v. AT & T Inc.*, 709 F.3d 343, 350 (4th Cir. 2013) (citation omitted). Under the clear error standard, if the court's "account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *United States v. Ferebee*, 957 F.3d 406, 417 (4th Cir. 2020) (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74 (1985)).

Respondent, in support of her argument that South Korea was not CFS's habitual residence, restates arguments from previous filings and the bench trial. In particular,

Respondent first points to statements from the parties in January 2022 to demonstrate that they "had a shared, unchanging understanding that they and [CFS] were all moving away from South Korea imminently." (Mot. at 2.)

Determining a child's habitual residence is a "a fact-driven inquiry," during which "courts must be sensitive to the unique circumstances of the case and informed by common sense." *Monasky*, 589 U.S. at 78. (internal citation omitted). And while it may be more relevant in some cases to consider facts indicating acclimatization and in other cases to consider "the intentions and circumstances of caregiving parents," the Supreme Court has made clear that "[n]o single fact, however, is dispositive across all cases." *Id.* The fact that in January 2022, roughly ten months before the wrongful retention began, both parties made statements about an intent to leave South Korea, is not controlling in this analysis. It is but one factor that the court should and did carefully consider. (*See* Dkt. 67 at 35–36.)

Additionally, Respondent makes three points concerning the parties' behavior at the time of the retention. First, that Respondent and CFS "would not have known" they had a home in South Korea to return to given Petitioner's previously announced plans to move. (Mot. at 3.) Second, that Petitioner "vacated the family home and lease" in August 2022. (*Id.*) Third, that Petitioner never informed Respondent that he was diverging from his announced plan of leaving South Korea because he began dividing his time approximately evenly between Vietnam and South Korea. (*Id.*) The court indeed analyzed these points (among others) under the totality of the circumstances framework and still found that Petitioner had shown, by a preponderance of the evidence, that CFS was "at home" in South Korea immediately prior to his wrongful retention. This outcome comports with common sense. The evidence at the

bench trial showed that South Korea was the place where CFS was born and lived indefinitely before the time of his wrongful retention, where CFS left his belongings such as his clothes and toys when his mother took him on a trip she described as a "business trip" to the United States, and where his father continued to keep a residence in the same apartment complex where the family used to live. (Dkt. 67 at 32–33; Draft Trial Transcript at 25, 34, 37, 74.)

At bottom, under the totality of the circumstances analysis and using common sense, the court's account of the evidence is plausible, and it is unlikely that the Fourth Circuit would be left with a definite and firm conviction that a mistake has been committed. Therefore, the first factor weighs in favor of denial as Respondent has not produced sufficient evidence or arguments that would show she is likely to prevail on appeal under a clear error standard.

**B. Irreparable Injury**

Respondent argues that she will face irreparable injury because any visitation or future child custody hearing that takes place in South Korea will put her asylum application in the United States at risk. (Mot. at 3.) She also claims that any visit to South Korea would be no more than 90 days—not enough time, she argues, to complete a custody dispute in a country where neither party speaks the language. (*Id.*)

In support of her argument, Respondent has presented no evidence to the court explaining how her potential travel outside the United States would require her to abandon her asylum application as opposed to obtaining temporary status to travel outside the United States while her asylum application is pending. Nor has Respondent explained to the court why abandonment of that application amounts to an irreparable harm—one that cannot be remedied by, for instance, reapplying for asylum at a later date or applying for a permanent

immigration status based on non-asylum related factors. In fact, Respondent does not even allege that abandonment of her asylum application is a certain outcome. (*See id.* (describing how Respondent "would have to abandon, or severely risk abandoning" her asylum application were the court to deny the stay).) Faced with such speculative claims, the court cannot find Respondent's visa status supports a finding of irreparable harm.

Regarding concern over the speed of the South Korean legal system in connection with Respondent's ability to be physically present in the country, Respondent "must accept the country where the child is habitually resident and its legal system as given." *Cuellar v. Joyce*, 596 F.3d 505, 510 (9th Cir. 2010) (rejecting an argument that returning a child to the habitual residence would be unfair to the respondent because of the nature of the foreign country's legal system). Respondent has not explained why she would be required to physically remain in South Korea for more than 90 consecutive days for any proceeding. And as to navigating the legal system of a county where neither party speaks the language, the court received testimony and evidence that both parties have previously sought out counsel in South Korea for advice on obtaining a divorce. (*See* Dkt. 67 at 11.) The court does not doubt that the parties could do the same with respect to child custody.

Respondent also asserts that CFS will face irreparable injury if returned to South Korea because he does not speak Korean, has no other relatives or friends nearby, and it remains unclear how Petitioner's work schedule will interact with CFS's daily routine. (Mot. at 3–4.) The court notes that these are the same factors that existed when the family (*i.e.*, Father, Mother, and CFS) together lived in South Korea. The testimony at the bench trial painted a picture of an expatriate family that had a relatively stable and normal life in South Korea even

though the family did not speak Korean, did not have relatives or friends nearby, and Petitioner worked long hours away from home. Regardless, the court need not consider the potential irreparable harm to CFS in analyzing this stay factor because injury to CFS is not relevant to the court's analysis of irreparable harm to Respondent. *See, e.g.*, *Rath v. Marcoski*, No. 8:16-CV-2016-T-23AEP, 2016 WL 7245608, at *3 (M.D. Fla. Dec. 12, 2016) (finding parent's argument failed because she "conflate[d] the risk of irreparable injury to herself with the risk to the child"). Therefore, the second factor weighs in favor of denial.

**C. Substantial Injury to Other Parties**

Respondent argues that Petitioner would not be substantially injured by a stay because Petitioner "waited two and a half years" to file the instant petition "despite knowing where and how to look for the child." (Mot. at 4.) She also claims that Petitioner is not substantially injured because it is unclear what Petitioner's "immediate plan for taking care of [CFS] could even be," given his routine travel between Vietnam and South Korea, and that "Petitioner in fact likely requires more time to arrange a more stable life for CFS in Asia, if it is even possible." (Mot. at 4.)

The court disagrees. Respondent fails to recognize that if the court grants a stay, Petitioner will continue to suffer the very harm that led to the instant petition—the absence of CFS from Petitioner's life. That harm stems from Respondent's wrongful retention of CFS in the United States for more than two years and continues to the present. Whether Petitioner requires additional time to arrange for the logistics of CFS's life in South Korea also does not serve to neutralize the harm to Petitioner of CFS's continued absence.

Granting the stay would additionally cause substantial harm to CFS. Respondent argues that "[s]ending CFS to a country he does not remember, in which the population speaks a language he does not know, has customs he is not familiar with, and with a person who has not seen or cared for him in over two years" will cause "confusion and instability" in CFS's life. (*Id.*) This is certainly true. But South Korea has become "a country [CFS] does not remember" only because Respondent wrongfully retained him in the United States more than two years ago. "A removing parent must not be allowed to abduct a child and then—when brought to court—complain that the child has grown used to the surroundings to which they were abducted." *Friedrich v. Friedrich*, 78 F.3d 1060, 1068 (6th Cir. 1996). Instead, "[u]nder the logic of the Convention, it is the *abduction* that causes the pangs of subsequent return." *Id.* (emphasis in original).

The court found Respondent wrongfully retained CFS in the United States in October 2022. (*See* Dkt. 67.) She cannot now claim that his return to South Korea will cause him substantial harm because he has become accustomed to the country in which he was wrongfully retained. Granting a stay would deprive CFS of "precious months" he could spend readjusting to life in his country of habitual residence—adjustments that include developing daily routines, reacquainting himself with customs, and making new friends. *Chafin*, 568 U.S. at 178. Thus, the third factor also weighs against granting the stay.

**D.  Public Interest**

Respondent makes no argument as to where the public interest lies. Instead, Respondent asserts that she is "strongly considering hiring new counsel and seeking a new trial or similar remedies." (Mot. at 5.)

The Hague Convention and ICARA demonstrate a public interest in the expeditious resolution of petitions for the return of children, "for the sake of the children who find themselves in such an unfortunate situation." *Chafin*, 568 U.S. at 179. The court finds that a stay would conflict with the Convention's mandate of prompt return and its "core premise" that "the interests of children in matters relating to their custody are best served when custody decisions are made in the child's country of habitual residence." *Golan v. Saada*, 596 U.S. 666, 670 (2022) (quoting *Monasky*, 589 U.S. at 72) (cleaned up).

Here, the public interest favors CFS's return to his habitual residence in South Korea so that a court of competent jurisdiction there can adjudicate any custody dispute. As the Court observed in *Chafin*, "[c]ases in American courts often take over two years from filing to resolution; for a six-year-old such as [CFS], that is one-third of h[is] lifetime." 568 U.S. at 179–80. Return to South Korea as directed in the court's return order ensures CFS will not "lose precious months when [he] could have been readjusting to life in [his] country of habitual residence." *Id.* at 178.

Lastly, denying a stay at this juncture does not prevent Respondent from filing an appeal with the Fourth Circuit. Nor does it prevent Respondent from seeking a stay from that court. It does, however, allow CFS to return to his country of habitual residence "as expeditiously as possible," "minimiz[ing] the extent to which uncertainty adds to the challenges confronting both parents and child" during this difficult legal proceeding. *Id.* at 179–80. Therefore, the fourth factor also weighs in favor of denial.

### III. Modification Regarding Provisional Remedies

Respondent argues that her motion is "especially urgent" as Petitioner seeks to have CFS travel with him on December 19, 2024, to facilitate the flight to South Korea from Washington Dulles International Airport on December 20, 2024. (Mot. at 1.) Respondent claims that CFS cannot leave the Western District of Virginia pursuant to the court's provisional remedy entered at the beginning of this case. (*See id.* at 6.) While the court originally imposed that provisional remedy (*see* Dkt. 4 at 1–2), the court now **MODIFIES** that remedy in light of the parties' representations and to facilitate CFS's travel. CFS is permitted to leave the Western District of Virginia on December 19, 2024, to effectuate travel to South Korea on the ordered date of return. The court **DIRECTS** the parties to coordinate to facilitate safe and efficient travel for CFS.

### IV. Conclusion

For the reasons set forth above, Respondent's Motion for Stay Pending Appeal (Dkt. 72) is **DENIED**.

An appropriate Order shall accompany this Memorandum Opinion. The Clerk is directed to forward a copy of this Memorandum Opinion to all counsel of record.

**IT IS SO ORDERED.**

**ENTERED** this 19th day of December, 2024.

/s/ *Jasmine H. Yoon*
_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE