CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
December 27, 2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| Josef Christian Schwaneberg, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 4:24-cv-00039 |
| ) | |
| Cyrilia Lopez, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

This matter is before the court on Respondent Cyrilia Lopez's ("Respondent") "Rule 59(e) Motion to Alter or Amend Judgment." (Dkt. 71 [hereinafter "Mot."].) The motion requests "alteration of the judgments granting return of the parties' child to [South] Korea." (*Id.* at 1.) For the reasons that follow, the court will deny the motion to alter or amend the court's judgments.

### I.   Background

On October 11, 2024, Petitioner Josef Christian Schwaneberg ("Petitioner") filed a petition for the return of his son, CFS, to South Korea pursuant to the 1980 Hague Convention on the Civil Aspects of International Child Abduction ("the Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.* (Dkt. 1.) The court held a bench trial on the petition on November 19, 2024. (Dkt. 64.) On December 6, 2024, the court issued a Memorandum Opinion and Order granting Petitioner's petition for return of CFS to South Korea, concluding that Petitioner had sufficiently proven

a *prima facie* case for return and that Respondent had not sufficiently demonstrated any relevant defense. (Dkts. 67 [hereinafter "Mem. Op."], 68.) After receiving input from the parties concerning the logistics of CFS's return to South Korea, the court entered a "Return Order With Conditions." (Dkt. 70.) The court ordered that CFS be returned to South Korea on December 20, 2024, in the care and company of Petitioner. (*Id.* at 1.) On December 18, 2024, Respondent filed a motion to alter or amend the judgments, citing Federal Rule of Civil Procedure 59(e).[1] The court set an expedited briefing schedule on the motion. (*See* Dkt. 73.) The court has received briefing from the parties and the motion is now ripe for disposition. (*See* Dkts. 71, 80.)

## II.  Standard of Review

"[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (internal quotations marks omitted). The Fourth Circuit has previously recognized three grounds for altering or amending a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Id.* The rule permits a district court to correct its own errors, "sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). A prior decision does not qualify for alteration or amendment "to correct a clear error of law

---

[1] The same day, Respondent filed a "Motion to Stay Enforcement of Judgment Pending Appeal." (Dkt. 72.) On December 19, 2024, the court denied that motion. (Dkt. 79.)

- 2 -

or [to] prevent manifest injustice" just because it is "maybe or probably wrong"—it must be "dead wrong."  *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec.*, 866 F.2d 228, 233 (7th Cir. 1988)).

Additionally, Rule 59(e) motions may not be used to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance.  *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (The Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." (quoting 11 Wright & Miller, *Federal Practice and Procedure* § 2810.1, at 127–28 (2d ed. 1995))).  Accordingly, Rule 59(e) motions are not "opportunities to rehash issues already ruled upon because a litigant is displeased with the result." *Alcala v. Hernandez*, No. 4:14-cv-04176, 2015 WL 7312891, at *2 (D.S.C. Nov. 19, 2015).

### III.   Analysis

Respondent moves the court to alter or amend its judgments and to modify its decision, presumably to deny the petition for return.  (Mot. at 1.)[2]  Respondent claims broadly that the court's Memorandum Opinion contains "mistakes of material facts that are clear from the record" which the court "relied on in forming its opinion, and related errors of reasoning and of law."  (*Id.*)  But beyond pointing out supposed mistakes, the motion does nothing to show

---

[2] Although Respondent moves the court "for an alteration of the judgments granting return of the parties' child to Korea" because of mistakes, she does not specify how the court should alter those judgments.  (*See* Mot. at 1.)  The court presumes that the requested alterations would be to change the court's prior order (Dkt. 68) so as to deny the petition and alter its "Return Order With Conditions" (Dkt. 70) so as not to require return of CFS to South Korea.

that the court has committed a clear error such that it renders the court's prior opinion "dead wrong." Indeed, Respondent's motion does not show how she satisfies the standard for a Rule 59(e) motion at all.

Instead, Respondent's motion does two things. First, it largely attempts to rehash issues already ruled upon by the court. These efforts to relitigate issues previously resolved are insufficient to warrant granting extraordinary relief under Rule 59(e). "Rule 59(e) does not envision a motion serving these ends." *Sutherlin v. Smith*, No. 4:15-cv-00037, 2016 WL 4402072, at *1 (W.D. Va. Aug. 18, 2016), *aff'd*, 676 F. App'x 197 (4th Cir. 2017). Second, it attempts to show purported errors with the court's Memorandum Opinion. Having reviewed Respondent's motion and the grounds for altering the court's judgment, the court finds that she points to no "intervening change in controlling law," no "new evidence not available at trial," and no "clear error of law" or "manifest injustice" sufficient to warrant the alteration of its judgment.

Respondent groups the court's supposed errors into three categories: (1) "Habitual Residence," (2) "Acquiescence," and (3) "Settled in New Environment." (*See* Mot. at 1–4.) Upon review of the record, however, it is clear that these contentions not only fail to raise any of the three grounds for which relief is available under Rule 59(e), but they also are largely inaccurate.

### A.     Habitual residence

First, Respondent asserts that the Memorandum Opinion "overlooks that when the Respondent told a lawyer that she was moving to the [United States] . . . she also forwarded

that email to the Petitioner as soon as she received a response from the lawyer." (Mot. at 1.) This, Respondent implies, could bear on a finding of shared intent to abandon South Korea. (*Id.*) Respondent is correct that in Respondent's Exhibit 2, she wrote to a lawyer that she was "moving to the USA." (Resp't Ex. 2.) And it is true that the same exhibit shows she forwarded the email to Petitioner the following day. (*Id.*) To Respondent, this is strong evidence of her intent to permanently relocate to the United States and Petitioner's knowledge of "multiple statements of [that] intent." (Mot. at 1.) But in her deposition and in live testimony to the court, Respondent was unequivocal that when she departed for the United States, she "didn't have any intentions to stay in the United States indefinitely." (Pet'r Ex. 41, Dep. of Cyrilia Lopez at 42:22–44:4, November 5, 2024 [hereinafter "Lopez Dep."]; Draft Trial Transcript at 134–35 [hereinafter "Tr."].) Moreover, as discussed at length, even if the court had found the parties shared an intent to abandon South Korea, that intent alone "does not overcome the evidence that, immediately before the alleged wrongful retention, CFS was 'at home' in South Korea." (Mem. Op. at 35–36.)

Second, Respondent asserts that the "mistaken finding" above "may be the reason" the court did not address Respondent's "equitable arguments" concerning reliance on Petitioner's statements. (Mot. at 1–2.) While it is true that Respondent mentioned equity in her trial and summary judgment briefs and in one sentence at the bench trial, Respondent submitted no authority showing whether and how equitable concepts like reliance can factor into the court's habitual residence analysis. Without such authority, the court declines to consider equitable arguments in determining Petitioner's *prima facie* case. *See Friedrich v.*

- 5 -

*Friedrich*, 983 F.3d 1396, 1400 (6th Cir. 1993) ("It is important to understand that 'wrongful removal' is a legal term strictly defined in the Convention. It does not require an ad hoc determination or a balancing of the equities."); *see also Lozano v. Montoya Alvarez*, 572 U.S. 1, 12–13 (2014) (declining to apply the doctrine of equitable tolling to ICARA after finding it "particularly inappropriate to deploy [a] background principle of American law automatically when interpreting a treaty"). And even if equitable estoppel were appropriate to consider in this context, Respondent did not outline the three basic requirements for its application and did not attempt to prove those elements in either her summary judgment motion or at trial.

Third, Respondent asserts that the Memorandum Opinion "overlook[s the fact] that the parties believed, and acted upon, each other's statements of intention" thus creating a shared intent. (Mot. at 2.) But Respondent does not outline or argue the ways in which the parties acted in reliance upon each other's statements. (*Id.*) Nor does she explain how the parties' action that postdates the date of wrongful removal is relevant to the habitual residence analysis. The court already addressed Respondent's arguments about shared intent and will reject her attempt to rehash an argument that has been considered and rejected. (*See* Mem. Op. at 34–36.)

Fourth, Respondent asserts that Petitioner testified at deposition that his intention, before her departure, was for Respondent to be able to stay in the United States indefinitely. (Mot. at 2.) But both parties testified at the bench trial that it was no one's intention that Respondent move to the United States permanently. (*See* Tr. at 51–52, 134–35.) More importantly though, given the habitual residence analysis, Petitioner was unequivocal that he

always expected and wished for CFS to return to South Korea. (*Id.* at 43, 48–49.) Respondent does not explain how Petitioner's statement in the deposition, which was refuted by both parties' testimony at trial, shows that the court's judgments were "dead wrong."

Fifth, Respondent asserts that the court erred by finding the fact that Respondent had a visa renewal appointment in April. (Mot. at 2.) Respondent points to Petitioner's testimony at deposition in which he stated that the appointment was never scheduled. (*Id.*) But Petitioner testified at trial that Respondent's spousal visa renewal would have been slotted for April 22, 2022. (Tr. at 29.) And Petitioner testified that renewing a spousal visa was a simple process, which could be done with *or without* an appointment. (*See id.* at 28.) Thus, Respondent fails to show how Petitioner's deposition testimony interpreted in isolation amounts to clear error committed by the court.

Sixth, Respondent claims the court "overlooked [the] significance" of her argument that after Petitioner announced specific plans to move to Vietnam in January 2022, there was no further discussion to change that plan to make it conditional or uncertain. (Mot. at 2.) But the court did not overlook that significance. Rather, the court addressed the same argument in its Memorandum Opinion. (*See* Mem. Op. at 34–36.) As this court noted, shared intent was just one among many factors it considered in making the habitual residence determination after carefully reviewing the totality of the evidence. (*Id.*) Thus, the court rejects Respondent's attempts to rehash an argument that the court has already considered and spurned.

Seventh, Respondent argues that the court's Memorandum Opinion incorrectly contains an "intermittent impression" that Respondent agreed to return CFS to South Korea

on a certain date, which "may have influenced the Court's decision on this issue." (Mot. at 3.) Respondent points to only one instance in which the court referred to October 4, 2022, as the "agreed-upon return date." (*Id.* (quoting Mem. Op. at 37).) Because the parties did not dispute the date of the alleged wrongful retention, (*see* Mem. Op. at 29 n.4), the court finds it a correct statement that October 4, 2022, was the "agreed-upon" date that CFS was due to return to South Korea.

Eighth, Respondent asserts that the Memorandum Opinion "gives the impression" that the three or four suitcases she brought with her "contained everything for the stay in the U.S." and that she "in fact . . . also shipped about 6 to 8 boxes." (Mot. at 3.) However, that finding of fact in the Memorandum Opinion tracks exactly what Respondent testified to at the bench trial. (*Compare* Mem. Op. at 15 ("Respondent packed three or four suitcases for the trip, which contained clothes for three seasons, toys for CFS, Respondent's studio equipment, and any documents Respondent might need.") *with* Tr. at 135 ("Q: When you came to the United States, how many suitcases did you bring with you? A: Maybe three or four. Q: What did you have in those suitcases? A: Clothes for the season, toys for CFS, I guess, and my studio equipment and songs and documents that I may need.").) Moreover, Respondent never testified in her deposition or at trial that she shipped six to eight boxes with her. Thus, the court is unpersuaded by the argument that the court was under the wrong "impression" given the testimony provided by Respondent during the court proceeding. Even if true, the existence of additional boxes shipped to the United States does not constitute new evidence that was unavailable at the time of the bench trial.

Ninth, Respondent argues that the opinion does not contain enough information about CFS's habitual residence at the time of the wrongful retention and reiterates her argument concerning Petitioner's supposed abandonment of South Korea. (Mot. at 3.) This argument again attempts to rehash issues already considered and rejected by the court and therefore does not warrant the court to alter or amend its previously issued judgment.

### B. Acquiescence

Respondent claims the court "overlooked" that "[c]ounsel expressly argued that the main evidence of acquiescence was 2.5 years of inaction, including [Petitioner] never asserting or asking that the child be returned to Korea." (*Id.* (citing Mem. Op. at 43).) Contrary to her argument, the court directly heeded in its Memorandum Opinion that "Respondent argues that Petitioner's failure to swiftly pursue a Hague Convention case or 'seek the child's return in any other way' for two and a half years amounts to a 'consistent attitude of acquiescence over a significant period of time.'" (Mem. Op. at 43 (quoting Resp't's Trial Br. at 13 (Dkt. 45)).) The court then considered that argument and found it unavailing and does not now see proper grounds for altering or amending its judgment. (*Id.*)

### C. Settled in New Environment

Respondent argues that the court's Memorandum Opinion incorrectly states that she stopped sharing her address with Petitioner based on a loss of trust, when he refused to provide financial assistance. Respondent claims that she actually testified at trial that "once she told the Petitioner she was moving to Virginia, Mr. Nobles began sending her messages about Virginia, and in California he had sent stalking messages saying he knew where she was."

(Mot. at 3–4.)  The court believes Respondent is suggesting that the reason she did not share her address in Virginia with Petitioner is because she believed he was purposely sharing her addresses with Nobles, given Nobles' ability to find her and history of stalking her.  True, Respondent briefly stated that she did not trust Petitioner "[b]ecause he was often times CCed on emails from" Nobles.  (Tr. at 121.)  But at trial Respondent explained more fulsomely why she did not share her Virginia address with Petitioner:

> [Respondent]:  So the person I had a restraining order against would constantly CC Christian so I know that he was seeing the emails because I got them as well.  Christian then shared a whole file about this promoter and his DUI and battery and like fraudulent charges against him.  So he eventually knew about how this person's character was.  *So given the fact that this person was harassing me and also did nothing about it and I asked for help financially.*  Not once did Christian buy clothes, ask what CFS ate for lunch, [how's] CFS's health.  There were no Christmas presents this year, last year, no birthday presents this year, last year, since 2022 I haven't had a Christmas present for CFS.
>
> [Respondent's Counsel]:  Okay.
>
> [Respondent]  So that's reasons were reasons *I felt like I couldn't trust him because when CFS needed protection and care, the basic amenities he was not there.*  So with that put together I felt in my gut that I could not trust Christian.

(*Id.* at 121–22 (emphasis added)).  In its Memorandum Opinion, the court accurately included factual findings consistent with that testimony, which reflected both her fear of Nobles as well as her loss of trust in Petitioner:

> Respondent has never shared CFS's addresses in Virginia with Petitioner, citing fears that she could not trust him because he was frequently copied on emails from Nobles.  Respondent testified that she lost trust in Petitioner after he became aware of Nobles' harassing behavior but continued to deny her requests for financial assistance.

(Mem. Op. at 24 (internal citations omitted).)

Lastly, Respondent asserts that the court "mixed up" the timeline "on the 'settled' issue" because a doctor's note indicating that moving was a "stressor" for CFS was written in 2023, and thus "could not be a description of the child's response to future events." (Mot. at 4.) Additionally, Respondent argues that there was "no evidence of problems adjusting to the move from the barndominium to the house two doors away." (*Id.*) But the court did not mix up the timeline—it found a fact clearly and unequivocally supported by the record. (*See* Mem. Op. at 23.) Respondent is again requesting that the court re-weigh the evidence in her favor without showing how she meets the standards under Rule 59(e). Thus, the court declines to amend or alter its judgment based on this argument.

## IV.   Conclusion

For the foregoing reasons, the court will **deny** the motion to alter or amend the judgments (Dkt. 71). An appropriate Order shall accompany this Memorandum Opinion.

**ENTERED** this 27th day of December, 2024.

/s/ *Jasmine H. Yoon*
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE