CLERK'S OFFICE U.S. DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED
July 24, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| Josef Christian Schwaneberg, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:24-cv-00039 |
| | ) | |
| Cyrilia Lopez, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION**

This matter is before the court on Petitioner Josef Christian Schwaneberg's ("Petitioner") "Motion for Attorney Fees and Costs" (Dkt. 85 [hereinafter "Mot."]). After prevailing on his petition under the Hague Convention, Petitioner moves the court to enter an order pursuant to Federal Rule of Civil Procedure 54 requiring Respondent Cyrilia Lopez ("Respondent") to pay Petitioner's attorney fees in the amount of $93,952.00 and costs in the amount of $22,052.01. For the reasons that follow, the court will grant the motion in part.

### I.   Background

On October 11, 2024, Petitioner filed a petition for the return of his son, CFS, to South Korea pursuant to the 1980 Hague Convention on the Civil Aspects of International Child Abduction ("the Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.* (Dkt. 1.) The court held a bench trial on the petition on November 19, 2024. (Dkt. 64.) On December 6, 2024, the court issued a Memorandum

Opinion and Order granting the petition.[1]  (Dkts. 67, 68.)  The court concluded that Petitioner had sufficiently proven a *prima facie* case for return and that Respondent had not sufficiently demonstrated any relevant defense.  (Dkt. 67 at 2.)  In its order granting the petition, the court permitted Petitioner sixty days to file an application for attorneys' fees and expenses.  (Dkt. 68 at 1.)  It also provided Respondent with thirty days to respond and allowed Petitioner fourteen days to file any additional reply.  (*Id.* at 1–2.)

Exactly sixty days later, on February 4, 2025, Petitioner filed a motion for attorney fees and costs as well as a memorandum in support.  (*See* Mot.; Mem. of Law in Supp. of Pet.'s Mot. for Att'y Fees and Costs (Dkt. 86) [hereinafter "Schwaneberg Mem."].)  Petitioner also submitted a declaration from counsel to accompany the memorandum in support.  (*See* Decl. of Counsel in Supp. of Pet.'s Mot. For Att'y Fees and Costs (Dkt. 87) [hereinafter "Decl."].)  Thirty-one days later, Respondent filed a response to the motion and a motion for a one-day extension of time.  (*See* Resp't's Resp. to Mot. for Fees and Costs (Dkt. 88) [hereinafter "Lopez Resp."]; Mot. for Extension of Time to Accept Late-Filed "Resp. to Mot for Fees and Costs" as Timely Filed Because of E-Filing System Problem (Dkt. 89).)  The court granted the extension and provided Petitioner with an additional day to reply.  (Dkt. 90.)  On March 20, 2025, Petitioner filed a reply in support of the motion.  (Pet.'s Reply to Resp't's Resp. to Mot. for Fees and Costs (Dkt. 91) [hereinafter "Schwaneberg Reply"].)

---

[1] The court incorporates by reference all of the findings of fact and conclusions of law in the Memorandum Opinion (Dkt. 67) rather than reiterating them in this order.

## II. Analysis

The Hague Convention and ICARA "require a court to order the respondent to pay the petitioner's necessary expenses if the court orders the return of the child, unless such an award would be 'clearly inappropriate.'" *Wertz v. Wertz*, No. 7:18-cv-00061, 2018 WL 1575830, at *17 (W.D. Va. Mar. 30, 2018); *see also Chafin v. Chafin*, 568 U.S. 165, 169 (2013) ("ICARA also provides that courts ordering children returned generally must require defendants to pay various expenses incurred by plaintiffs . . . ."). Specifically, ICARA provides that:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of the proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3). Thus, the statute "impos[es] 'a mandatory obligation' on courts to award necessary expenses to a successful petitioner, except when the respondent demonstrates that an award would be clearly inappropriate." *Rath v. Marcoski*, 898 F.3d 1306, 1310 (11th Cir. 2018) (quoting *Salazar v. Maimon*, 750 F.3d 514, 519 (5th Cir. 2014)); *see also Sundberg v. Bailey*, 765 F. App'x 910, 914 (4th Cir. 2019) (explaining that ICARA establishes a "rebuttable presumption in favor of a fee award," overcome when necessary expenses are "clearly inappropriate").

An award of fees and costs under the Hague Convention "serves two purposes: (1) 'to restore the applicant to the financial position he or she would have been in had there been no removal or retention,' and (2) 'to deter such removal or retention.'" *Wertz*, 2018 WL 1575830, at *17 (quoting Hague Convention; Text and Legal Analysis, 51 Fed. Reg. 10494–01, 10511

(Mar. 26, 1986). "A party seeking an award of attorney's fees must submit adequate evidence detailing the hours worked and his or her rates." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

The court first reviews whether Petitioner has submitted "necessary expenses" and then addresses whether Respondent has shown that any order would be "clearly inappropriate."

### A. "Necessary Expenses"

The court first determines how much to award Petitioner in ordering "respondent to pay necessary expenses incurred by or on behalf of the petitioner." 22 U.S.C. § 9007(b)(3). Necessary expenses "includ[e] court costs, legal fees, foster home or other care during the course of the proceedings in the action, and transportation costs related to the return of the child." *Id.*

#### 1. Attorney Fees

Petitioner seeks $93,952.00 in "attorney fees." (Schwaneberg Mem. at 2.) He asserts that utilizing the loadstar approach, the court should order fees for his attorneys as well as his attorneys' paralegals and legal assistant. (*Id.* at 2–3.) Petitioner additionally asserts that the total number of hours worked on the case are reasonable given the circumstances and that the hourly rates charged are within the normal range of rates charged by comparable lawyers. (*Id.* at 3.) Petitioner includes the following information in his declaration:

| NAME | HOURLY RATE | HOURS | FEES |
|---|---|---|---|
| Attorney Katelyn Skinner | $450 | 96.30 | $43,335.00 |
| Attorney Katelyn Skinner | $575 | 0.20 | $115.00 |
| Attorney Katrina Seipel | $0 | 0.90 | $0.00 |
| Attorney Katrina Seipel | $365 | 84.20 | $30,733.00 |
| Attorney Katrina Seipel | $415 | 2.00 | $830.00 |
| Attorney Noah Morss | $335 | 0.50 | $167.50 |
| Attorney Greg Wallace | $285 | 6.00 | $1,710.00 |
| Paralegal Wendy Goodyear | $0 | 3.30 | $0.00 |
| Paralegal Wendy Goodyear | $260 | 47.70 | $12,402.00 |
| Paralegal Wendy Goodyear | $295 | 2.30 | $678.50 |
| Paralegal Rachel Perez | $215 | 0.30 | $64.50 |
| Paralegal Lucas Dudley | $0 | 0.30 | $0.00 |
| Paralegal Lucas Dudley | $185 | 6.90 | $1,276.50 |
| Legal Assistant Anthony Johnson | $150 | 17.60 | $2,640.00 |
| **Total Fees:** | | | $93,952.00 |

(Decl. at 3.) Petitioner also includes time entries along with text descriptions of the legal work completed for four attorneys, three paralegals, and one legal assistant. (*See* Decl. Ex. 1.)

Determining reasonable attorney fees "is a matter of discretion with the court." *Neves v. Neves*, 637 F. Supp. 2d 322, 339 (W.D.N.C. 2009) (citing *Robinson v. Equifax Info. Services*, 560 F.3d 235, 243 (4th Cir. 2009)). The court will apply the lodestar method, which has been used by other federal courts, to determine the amount of reasonable attorney fees to award. *See id.* (collecting cases); *Chambers v. Russell*, No. 1:20CV498, 2021 WL 1581074, at *2–6 (M.D.N.C. Apr. 22, 2021). Under the lodestar method, the court multiplies the number of hours

reasonably expended by a reasonable rate to calculate the appropriate award amount, *Chambers*, 2021 WL 1581074, at *2, after considering the following twelve factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008).

The party seeking an award of attorney's fees must submit adequate evidence detailing the hours worked and the rates claimed. *Hensley*, 461 U.S. at 433. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* In applying the lodestar method, the court, in its discretion, may reduce the award requested by Petitioner. *Trudrung v. Trudrung*, No. 1:10CV73, 2010 WL 2867593, at *2 (M.D.N.C. July 21, 2010) (citing *Hensley*, 461 U.S. at 433).

### i.   *Reasonable Hourly Rate*

In support of his fee application, Petitioner submits a declaration from Attorney Seipel to support the reasonable hourly rate. (*See* Decl.) The declaration explains that Attorney Katelyn Skinner billed at an hourly rate of $450 and $575, Attorney Seipel billed at an hourly rate of $365 and $415, Attorney Noah Morss billed at an hourly rate of $335, and Attorney Greg Wallace billed at an hourly rate of $285. (*Id.* at 2.) Attorneys Skinner and Seipel have two rates each because they increased their hourly billing rate at the beginning of 2025. (*Id.* at

- 6 -

3.)  Attorney Skinner has practiced law for 14 years while Attorney Seipel has practiced law for 8 years.  (*Id.*)  During the relevant period, Attorney Skinner was a partner at her law firm, and Attorney Seipel was an associate in 2024 before becoming a partner in 2025.  (*Id.*)  The declaration provides no information or background about the other two attorneys: Attorneys Morss and Wallace.  Based on a review of the law firm website, the court considers these two attorneys to be associates.  The declaration also provides no information or background about the three different paralegals and one legal assistant who worked on this matter.

Petitioner also attaches an exhibit listing statistical information about the billing rate for Portland, Oregon lawyers with various years of experience.  (*See* Decl. Ex. 2.)  In his memorandum, Petitioner claims that Attorneys Skinner and Seipel are "within the range of hourly billing rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  (Schwaneberg Mem. at 3 (quoting *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995).)  However, the relevant legal community the court looks to under the lodestar analysis is generally that in which the district court sits.  *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994); *see also Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988) ("The community in which the court sits is the appropriate starting point for selecting the proper rate.").  Thus, the relevant legal community is the Western District of Virginia, not Portland, Oregon.  The hourly billing rate prevailing in this district "can 'be established through affidavits reciting the fees of counsel with similar qualifications, information concerning fee awards in similar cases, and/or specific evidence of counsel's billing practice.'"  *Sines v. Kessler*, 343 F.R.D. 311, 321 (W.D. Va. 2022) (quoting

*Freeman v. Potter*, No. 7:04-cv-00276, 2006 WL 2631722, at *4 (W.D. Va. Sept. 13, 2006)). Additionally, "[t]he court may also rely on its 'own familiarity with the rates prevailing in the district.'" *Id.* (quoting (*Rogers v. Summit Receivables*, No. 3:17-cv-00069, 2018 WL 1161144, at *4 (W.D. Va. Mar. 5, 2018)).

Without meaningful evidence from the parties regarding the prevailing hourly billing rate in the Western District of Virginia for similar work, "the Court turns to a review of reasonable fees awarded in other civil cases in the local community."[2] *Minnix v. Sinclair Television Grp., Inc.*, No. 7:23-cv-00091, 2024 WL 1885568, at *4 (W.D. Va. Jan. 24, 2024). Based on a review of recent complex civil matters in the district, the tasks completed by Petitioner's attorneys, and the court's own familiarity with billing rates in the relevant community, the court will determine the reasonable hourly rates for the attorneys this case. After considering the factors supplied by the *Grissom*, the court finds that an hourly rate of $400 for partners, $250 for associates, and $150 for paralegals and support staff to be reasonable. The court notes that these rates are slightly higher than other complex civil cases in this district, to account for the relevant factors the court must consider.[3] *See id.*; *Nazareth v. Shree Jay Jalaram, LLC*, No. 5:24-cv-70390, 2025 WL 1332968, at *5 (W.D. Va. May 7, 2025); *InPatient Consultants of N.C., P.C. v. Goad*, No. 7:22-cv-00199, 2024 WL 1346921, at *5 (W.D.

---

[2] Similar to the situation faced in *Minnix v. Sinclair Television Group, Inc.*, the court is unaware of any decision in this district analyzing an award of reasonable attorney fees and costs under 22 U.S.C. § 9007(b)(3). No. 7:23-cv-00091, 2024 WL 1885568, at *4 n.3 (W.D. Va. Jan. 24, 2024).

[3] These include, but are not limited to, the time and labor spent, the skill required in novel and complex cases like those under the Hague Convention, the preclusion of other employment, the results obtained, and the time sensitive nature of Hague Convention petitions. In its analysis, the court also considered the arguments of the parties in arriving at the rates. (*See* Lopez Resp. at 1, 4–5; Schwaneberg Reply at 2, 4.)

Va. Mar. 29, 2024); *Lamb v. Liberty Univ., Inc.*, No. 6:21-cv-00055, 2024 WL 1315919, at *3 (W.D. Va. Mar. 27, 2024); *Flores v. Virginia Dep't of Corr.*, No. 5:20-cv-00087, 2023 WL 6304680, at *10 (W.D. Va. Sept. 27, 2023); *James v. Delta Motors, LLC*, 672 F. Supp. 3d 155, 166 (W.D. Va. 2023); *Bressel v. Red Robin Int'l, Inc.*, No. 7:20-cv-00611, 2021 WL 3215124, at *2 (W.D. Va. July 29, 2021). Accordingly, the court will use the following rates in the lodestar analysis:

| Name | Hourly Rate |
| --- | --- |
| Attorney Katelyn Skinner | $400 |
| Attorney Katrina Seipel (as a partner) | $400 |
| Attorney Katrina Seipel (as an associate) | $250 |
| Attorney Noah Morss | $250 |
| Attorney Greg Wallace | $250 |
| Paralegals | $150 |
| Legal Assistants | $150 |

ii.  *Reasonable Hours Expended*

In establishing the reasonable hours expended, Petitioner must "submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433; *see also Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 709 (E.D. Va. 2012) ("The party requesting a fee bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."). The number of hours should exclude hours that are "excessive, redundant, or otherwise unnecessary" to arrive at the number of hours that would be properly billed to the client. *Hensley*, 461 U.S. at 434.

In this case, Petitioner has submitted an exhibit listing the time entries associated with billing for the attorneys, paralegals, and legal assistant. (Decl., Ex. 1.) Petitioner seeks to be compensated for 96.5 hours billed by Attorney Skinner, 84.2 hours billed by Attorney Seipel as an associate and 2 hours billed by Attorney Seipel as a partner, 0.5 hours billed by Attorney

Morss, 6 hours billed by Attorney Wallace, 57.2 hours billed by paralegals, and 17.6 hours billed by a legal assistant.[4] After a review of the time entries, the court finds that the claimed hours are not "excessive, redundant, or otherwise unnecessary," *Hensley*, 461 U.S. at 434, and will award the hours requested by Petitioner.

iii.  *Attorney's Fee Award – Conclusion*

For the foregoing reasons, the court calculates the attorney's fee award to the Petitioner as follows:

| Name | Hourly Rate | Hours Billed | Fee Award |
|---|---|---|---|
| Attorney Katelyn Skinner | $400 | 96.30 | $38,520.00 |
| Attorney Katrina Seipel (as a partner) | $400 | 2.00 | $800.00 |
| Attorney Katrina Seipel (as an associate) | $250 | 84.20 | $21,050.00 |
| Attorney Noah Morss | $250 | 0.50 | $125.00 |
| Attorney Greg Wallace | $250 | 6.00 | $1,500.00 |
| Paralegals | $150 | 57.20 | $8,580.00 |
| Legal Assistants | $150 | 17.60 | $2,640.00 |
| | | **TOTAL** | **$73,215.00** |

The court will award $73,215.00 in attorney's fees.

2.  Costs

Petitioner requests $22,457.01 in "costs." (Schwaneberg Mem. at 4–5.) Specifically, Petitioner seeks $330.55 in "research costs," $397.50 in "copy costs" for 1590 pages at $0.25 a page, $4,000.00 for work by a Korean lawyer, $8,558.77 for work by local counsel, $200.00

---

[4] The court omits hours for time entries which were written off.

for *pro hac vice* application fees, $2,693.81 for airline costs, $2,306.66 for hotel, car rental and meal costs, and $410.92 for FedEx expenses to ship exhibits to Virginia. (*Id.*)

### i. *Discrepancy in Addition*

The costs described do not total to the amount Petitioner seeks in his memorandum. Adding $330.55 + $397.50 + $4,000.00 + $8,558.77 + $200.00 + $2,693.81 + $2,306.66 + $410.92 results in a total of $18,898.21, not $22,457.01.[5] Petitioner makes no effort to explain the presence of the additional $3,153.80 in its request for costs in his memorandum. Thus, the court considers the initial request for costs to be $18,898.21 not $22,052.01, for the items described in his memorandum.[6]

### ii. *Local Counsel*

In Petitioner's request for "costs," he includes fees paid to his local counsel, Steven Leigh Raynor, of $8,558.77. (Schwaneberg Mem. at 4.) He asserts this amount includes fees paid to a "process server" as well as the "filing fee." (*Id.*) Petitioner did not include any documentation concerning these amounts or any time records concerning the hours billed by Petitioner's local counsel.

Respondent argues that the amount is unreasonable given the lack of documentation. (Lopez Resp. at 4–5.) The court agrees.

---

[5] Another oddity worth pointing out upfront: Petitioner includes a table listing out costs that total to $22,052.01 (*see* Dkt. 86 at 5) despite requesting $22,457.01 in his memorandum, (Schwaneberg Mem. at 4). The briefing makes no effort to explain this difference.

[6] It appears that in his declaration, Petitioner includes a slightly different table that does add up to $22,052.01. (*See* Decl. Ex. 1.) However, that table includes items mentioned nowhere in his memorandum, including "Research (on-line)" and "Consultation Fee – Pamilli Rennison (re: immigration issues)." Conversely, the court notes that this table does not include other fees that the memorandum includes, like the "Pro Hac Vice Application Fees." In resolving this discrepancy, the court considers the table in the memorandum to be Petitioner's formal request for costs.

The court does not doubt that some portion of the fee paid to local counsel includes payment to a process server and the court's filing fee. But upon review of the time entries, the court finds that Attorney Raynor's involvement was more than that. He was contacted and consulted many times throughout the pendency of the litigation. (*See* Decl. Ex. 1 at 1–7.) However, no information that would allow the court to conduct its lodestar analysis was submitted. That is, neither Attorney Raynor's hours worked, nor his hourly fees charged, were included in Attorney Seipel's declaration. Petitioner provides no additional information regarding Attorney Raynor in his reply brief.

For these reasons, the court finds that Petitioner has failed to show that the $8,558.77 request for local counsel attorney fees is reasonable. As a result, the court will discount this request by 50%, or $4,279.39. *See Chambers,* 2021 WL 1581074, at *4 (refusing to award legal fees when only a limited description of work was supplied, and no evidence was offered for an appropriate comparative rate).

### iii.   *Korean Counsel*

Petitioner also seeks "costs" paid to his Korean lawyer in the amount of $4,000.00. (Schwaneberg Mem. at 4.) Respondent argues that costs should not be awarded at all, viewing the work by Petitioner's Korean counsel to be unnecessary given Respondent's counsel conceded that Petitioner had custody rights under the law of the habitual residence. (Lopez Resp. at 5.) The court disagrees. In its first order in this case, the court stated that "both parties shall file affidavits of South Korean law." (Dkt. 4 at 3.) However, only Petitioner did—after engaging the services of Attorney Yeon-Ho Kim. (*See* Dkt. 38.)

That said, the court finds that the $4,000.00 request for costs is unreasonable. Like the request for fees paid to Attorney Raynor, the request for fees paid to the Petitioner's Korean lawyer suffers from the same defect—the court lacks information to determine a reasonable attorney's fee utilizing the lodestar method. The time entries included in the declaration describe emails to and from the attorney, a meeting with the attorney, and working with the attorney to prepare an affidavit. (*See* Decl. Ex. 1 at 2–4.) These time entries do not provide sufficient information as to the hourly rates charged and the number of hours worked on this case by Attorney Kim. The court therefore finds that Petitioner has failed to show that the $4,000.00 request for Korean counsel attorney fees is reasonable. As a result, the court will discount this request by 50%, or $2,000.00. *See Neves*, 637 F. Supp. 2d at 343–44 (disallowing attorney fees for German counsel when not enough information was supplied by petitioner to support the award).

       iv. *Other Fees*

The court finds the other fees requested by Petitioner to be necessary and reasonable and will award $330.55 for "Research Costs," $397.50 for "Copy costs," $200 for "Pro Hac Vice Application Fees," $2,693.81 for "Travel – Airline Costs," $2,306.66 for "Travel – Hotel, car rental, and meal costs" and $410.92 for "Postage (FedEx expenses re: exhibits to Virginia)." (Schwaneberg Mem. at 4–5.)

       v. *Cost Award – Conclusion*

For the foregoing reasons, the Court calculates the award of costs to Petitioner as follows:

| Description of Cost | Total |
|---|---|
| Research Costs | $330.55 |
| Copy costs (1590 pages x $0.25/pg.) | $397.50 |
| Expert Fees – Korean Lawyer | $2,000.00 |
| Local Counsel Fees (includes process server; filing fee) | $4,279.39 |
| Pro Hac Vice Application Fees | $200.00 |
| Travel – Airline Costs | $2,693.81 |
| Travel – Hotel, car rental, and meal costs | $2,306.66 |
| Postage (FedEx expenses re: exhibits to Virginia) | $410.92 |
| **TOTAL** | **$12,618.83** |

The court will award $12,618.83 in costs.

**B.    Clearly Inappropriate**

"ICARA gives courts the discretion to reduce or even eliminate a respondent's obligation to pay a prevailing petitioner's attorney's fees and costs where such an award would be clearly inappropriate." *Id.* (internal quotation marks omitted).  However, Respondent faces a substantial burden in establishing that an award is clearly inappropriate. *See Salazar*, 750 F.3d at 522 (emphasizing respondent's "statutory obligation to come forward with evidence" to establish that a fee award was clearly inappropriate).  The statute does not define "clearly inappropriate," and the inquiry is "fact dependent."  *Rath*, 898 F.3d at 1311.  Despite the paucity of guidance, two considerations have arisen "with some frequency" in the analysis.[7] *Id.*  First, courts have considered "whether a fee award would impose such a financial hardship

---

[7] The Fourth Circuit did not indicate that no other considerations may render a fee award clearly inappropriate. Accordingly, the court maintains equitable discretion to craft additional fact-dependent exceptions. *See Hart v. Anderson*, No. GJH-19-2601, 2021 WL 2826774, at *3 (D. Md. July 7, 2021).

that it would significantly impair the respondent's ability to care for the child." *Id.*; *see also Sundberg*, 765 F. App'x at 914. Second, courts have also looked to "whether a respondent had a good faith belief that her actions in removing or retaining a child were legal or justified." *Rath*, 898 F.3d at 1311; *see also Sundberg*, 765 F. App'x at 914.

    1.    <u>Financial Hardship</u>

Federal district courts have found evidence of a respondent's limited financial resources sufficient to reduce or deny an award of attorney's fees. *Gomez v. Gonzalez*, No. C24-5645-KKE, 2025 WL 1666243, at *3 (W.D. Wash. June 12, 2025) (collecting cases). Courts generally compare the fee award to a respondent's annual income. For example, a fee award of 150% of respondent's annual income was found to be large enough to significantly interfere with caring for a child. *See Cocom v. Timofeev*, No. 2:18-CV-002247-DCN, 2019 WL 5964634, at *2–4 (D.S.C. Nov. 13, 2019). However, a fee award of 60% of respondent's annual income was not found to be large enough to justify a reduction. *Chambers*, 2021 WL 1581074, at *2.

Respondent first argues that an order requiring her to pay Petitioner's attorney's fees and other costs would be clearly inappropriate due to a number of factors related to financial hardship. (Lopez Resp. at 1–3.) First, Respondent argues that her earnings over a roughly two-year period approximated $100,000.00 and that her income is irregular and uncertain. (*Id.* at 2.) Second, Respondent claims that while her boyfriend assisted with her legal bills and other costs, he is not wealthy, and the couple has faced financial constraints. (*Id.* at 2–3.) Third, Respondent asserts that her own total attorney's fees and costs in this case totaled $68,382.00 at the end of February. (*Id.* at 3.) Fourth, and finally, Respondent contrasts her

position with that of Petitioner, who she argues offered no child support other than day care center bills for a few months, insisted on litigating custody in a protracted contested case in Korea, and earns roughly $200,000.00 a year. (*Id.*)

Petitioner counters that Respondent is not facing any financial hardship whatsoever. First, Petitioner points out that Respondent's 2023 PayPal receipt tax form shows that she received $75,188.00 in 2023. (Schwaneberg Reply at 2 (citing Pet'r Trial Ex. 33).) Petitioner also asks the court to make a "reasonable . . . assumption[]" that Respondent makes more money now than at trial, and that not all her monetary gifts were disclosed. (*Id.* at 3.) Finally, Petitioner argues that the existence of the South Korean litigation custody matter has no bearing on whether a fee would be "clearly inappropriate" in this case. (*Id.*)

Petitioner has not been altogether consistent on this issue. When arguing against CFS being "well settled" in Virginia, Petitioner painted Respondent as being "far from gainfully employed and financially stable." (Dkt. 40 at 16.) That differs from the "reasonable assumption" he would like the court to make here. While the court previously found that Respondent "has made money performing on live streams via TikTok," it also found that her "income is not always predictable and is inherently volatile based on the nature of her work." (Dkt. 67 at 48–49.)

Still, beyond an assertion in her response brief, Respondent has not submitted evidence concerning her annual income. While at trial, Respondent offered an exhibit that listed $75,188.94 as the "[g]ross amount" of payment from PayPal, Inc. on her Form 1099-K for the 2023 tax year. (Resp.'s Trial Ex. 49.) But that amount does not represent Respondent's annual

income.  The court received evidence of other sources of income from sources like Zelle, CashApp, and Venmo,  (Pet.'s Trial Exs. 34, 36, 37,) but such evidence still does not provide sufficient information for the court to assess her financial instability.  Accordingly, the court finds that Respondent has not met the substantial burden in establishing that an award would be clearly inappropriate based on her financial situation.  *See Harvey v. Means*, No. 2:23-CV-1712, 2024 WL 4144155, at *2 (W.D. Wash. Sept. 11, 2024) ("On this record, the Court does not find that [the respondent's] economic and employment standing would render a fee award improper.").  "While the Court is sympathetic to Respondent's financial difficulties, those assertions alone—without any evidence that would render the award clearly inappropriate—do not overcome the presumption that the award should be granted."  *Gamboa v. Williams*, No. 4:24-CV-3020, 2025 WL 1195567, at *4 (S.D. Tex. Apr. 24, 2025).

        2.     Good Faith Belief

Respondent briefly argues that she had a good faith belief that her actions were justified when she brought CFS to the United States.  (Lopez Resp. at 3.)  In particular, Respondent claims that "[w]hen [she] brought the child to the U.S., both parents' understanding was not that there was anything illegal or civilly actionable about it, but simply that the parents disagreed about the child's ultimate return to Korea or Vietnam."  (Lopez Resp. at 3.)  But Respondent misses the point of the good faith analysis.  Here, the focus is not on whether Respondent's actions were justified on the date she brought CFS to the United States, but rather on whether she "had a good faith belief that her actions in . . . *retaining* [CFS] were legal or justified."  *Rath*, 898 F.3d at 1311 (emphasis added).  That is, "[t]he good faith belief

- 17 -

standard in this context" relates to whether Respondent honestly believed that CFS's retention on October 4, 2022 was lawful. *Hart v. Anderson*, No. GJH-19-2601, 2021 WL 2826774, at *3 (D. Md. July 7, 2021) (quoting *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013)). Respondent briefly gestures to potential mistakes of law, stating that she had "good reason" to think Petitioner's petition "might not succeed," because of the length of time CFS remained in the United States and her argument that both parties agreed to abandon Korea as the habitual residence. (Lopez Resp. at 3.) Respondent does not elaborate or explain further. The court therefore finds Petitioner has not met the substantial burden required to show that a fee award would be clearly inappropriate based on a good faith belief that CFS was not wrongfully retained on October 4, 2022.

### III.   Conclusion

For the foregoing reasons, the court will **grant in part** Petitioner's motion for attorney fees and costs (Dkt. 85.) Petitioner is awarded attorney fees in the amount of **$73,215.00** and costs in the amount of **$12,618.83**, for a total of **$85,833.83**. These costs are taxed against Respondent and shall be included in the judgment.

**ENTERED** this 24th day of July, 2025.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE