Case 4:24-cv-00039-JHY   Document 103   Filed 08/11/25   Page 1 of 8   Pageid#: 545

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
August 11, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| Josef Christian Schwaneberg, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 4:24-cv-00039 |
| ) | |
| Cyrilia Lopez, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION**

This matter is before the court on Respondent Cyrilia Lopez's ("Respondent") "Motion for Contempt (Corrected)." (Dkt. 93 [hereinafter "Mot."].) The motion requests that the court find Petitioner Josef Christian Schwaneberg ("Petitioner") in civil contempt of the court's previous Return Order With Conditions. (*Id.* at 1.) For the reasons that follow, the court will deny the motion for contempt.[1]

**I.      Background**

The court assumes familiarity with the facts of the case, which are discussed at length in the court's previous opinions. (*See* Dkts. 67 (findings of fact and conclusions of law resolving petition), 78 (resolving motion to stay pending appeal), 82 (resolving motion to alter judgment), 101 (resolving motion for attorney's fees and costs).) The court briefly recites facts necessary for the resolution of the motion.

---

[1] The same day Respondent filed her corrected motion, she filed an earlier version of the motion for contempt. (*See* Dkt. 92.) Because Respondent filed a corrected motion for contempt, the corrected motion is the one that the court will address and the original motion (Dkt. 92) will be denied as moot. *See Bradley v. Gannett Co. Inc.*, No. 1:23-cv-1100, 2024 WL 3905817, at *1 n.1 (E.D. Va. Aug. 20, 2024).

On December 6, 2024, the court granted Petitioner's Petition for Return of Child to Habitual Residence of South Korea. (Dkt. 68.) In the order granting that petition, the court directed the parties to meet and confer to jointly propose to the court logistics concerning CFS's return to South Korea and "any additional appropriate details, conditions, or 'undertakings' for CFS's return." (*Id.*) After receiving input from the parties, the court entered a Return Order With Conditions. (Dkt. 70.) In fourteen paragraphs, the court ordered that CFS be returned to South Korea, as well as logistics for how the return would work. (*Id.* at 1–2.) In its ninth paragraph, the court ordered that:

> CFS shall not be taken to a country that does not have the Hague Convention in force with the United States and with South Korea until a court of competent jurisdiction in South Korea makes a final custody determination.

(*Id.* at 3.)

On March 28, 2025, Respondent moved the court to find Petitioner in civil contempt of the court's Return Order With Conditions. Respondent claims that Petitioner knowingly violated this condition ("Paragraph 9") by taking CFS to Vietnam, a country that does not have the Hague Convention in force with the United States or with South Korea, on two occasions. (Mot. at 1.) Respondent later filed a brief in support of her motion for contempt. (Resp't's Br. in Supp. of Mot. for Contempt (Dkt. 94) [hereinafter "Lopez Mem."].) After requesting and receiving an extension, (Dkts. 95, 97), Petitioner filed a response brief on April 17, 2025, (Pet'r's Resp. to Resp't's Mot. for Contempt (Dkt. 98) [hereinafter "Schwaneberg Resp."].)

On July 2, 2025, at the direction of the court, the parties jointly filed a status report on the South Korean custody proceedings. (Joint Status Report (Dkt. 100).) That report informed the court that both Petitioner and Respondent have filed for sole custody of CFS in the Busan Family Court in South Korea. (*Id.* at 1.) A first hearing was held on June 11, 2025. (*Id.*) The parties give no indication or estimate of when that proceeding may conclude, other than it "might take some time" given the home and custody investigations that need to take place. (*Id.* at 2.) But the parties confirm that the process is ongoing, as they complete financial discovery requests, parenting questionnaires, and property disclosures. (*Id.* at 1.)

## II.     Standard of Review

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). The court may impose civil contempt remedies "to coerce obedience to a court order or to compensate the complainant" for injuries resulting from the contemnor's noncompliance. *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004) (quoting *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995)).

A finding of contempt is a "drastic remedy," and the movant carries the "heavy burden" to establish it. *Morgan v. Barry*, 596 F. Supp. 897, 898 (D.D.C. 1984). The court employs a "burden-shifting framework" to establish whether a party should be found in civil contempt. *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461–62 (4th Cir. 2020). As a first step, the moving party "must show by clear and convincing evidence '(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that

the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.'" *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 145 (4th Cir. 2023) (quoting *Fed. Trade Comm'n v. Pukke*, 53 F.4th 80, 101 (4th Cir. 2022)).

If these elements are established by clear and convincing evidence, the burden shifts to the alleged contemnor "to demonstrate that she made in good faith all reasonable efforts to comply with the decree." *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 529 (4th Cir. 2022) (cleaned up). "If the alleged contemnor fails to show good faith in making all reasonable efforts to comply with the order, they may be held in contempt." *Doe v. Mast*, 745 F. Supp. 3d 399, 416 (W.D. Va. 2024).

### III. Analysis

Respondent moves the court to find Petitioner in civil contempt. (Mot.; *see also* Dkt. 96.) Respondent claims that Petitioner knowingly violated Paragraph 9 on two occasions. (Lopez Mem. at 1.) The court begins and ends its analysis by reviewing whether Respondent has met her heavy burden of showing the elements of civil contempt by clear and convincing evidence.

Respondent asserts that the court's December 10, 2024 "Return Order With Conditions" represents a "final and dispositive order." (*Id.*) According to Lopez, the Order "included several conditions that protected the child's stability and welfare, and his relationships with both parents, including their regular, continuing and frequent contact with

him; and to ensure that the courts in South Korea would not be deprived of the power to fully weigh the evidence about what is in his best interests, and make a final custody order that would be enforceable *de jure* and *de facto*." (*Id.*)  Additionally, Respondent argues that Petitioner had actual knowledge of the Order and Paragraph 9 because "Petitioner and his counsel received the order while he was still in the Western District" and because "[t]he specific condition he violated was one that the parties had jointly proposed." (*Id.* at 4.)

For his part, Petitioner does not appear to contest that he had actual knowledge of the Order and Paragraph 9.  Instead, he challenges whether the court's Order remains a "valid decree" that can serve as the basis for a contempt ruling.  (*See* Schwaneberg Resp. at 5.)  In particular, he claims that cases Respondent cites involve "undertakings"—specific "conditions that a court can order when a child is returned in a Hague proceeding where the court has found a grave risk." (*Id.*)  And because no grave risk was found here, according to Petitioner, Paragraph 9 does not represent the type of "undertaking" for which contempt can be sought.

The court agrees with Petitioner for two reasons.  First, the court is not convinced that this case is an appropriate one to impose conditions like undertakings that extend beyond the granting of the petition, the return of CFS to his habitual residence, and the initiation of child custody proceedings in South Korea.  Undertakings are generally reserved for cases in which courts order the return of a child despite a finding of grave risk.  In those situations, "courts may impose a set of enforceable conditions on the return, known as undertakings." *Wertz v. Wertz*, No. 7:18-cv-00061, 2018 WL 1575830, at *15 (W.D. Va. Mar. 30, 2018).  Because the

court made no finding of grave risk as part of the petition, the court finds that Paragraph 9 does not represent a type of "undertaking" which can serve as a basis for a contempt finding.

Second, the court finds that Paragraph 9 may no longer be enforceable. In Hague Convention cases where a grave risk has been found, and accompanying conditions have been ordered, some courts remain doubtful as to the efficacy and enforceability of undertakings. *See Jacquety v. Baptista*, 538 F. Supp. 3d 325, 381 (S.D.N.Y. 2021); *Simcox v. Simcox*, 511 F.3d 594, 606 (6th Cir. 2007). That's because "[a]lthough reviewing courts are free to enter conditional return orders, they retain no power to enforce those orders across national borders." *Baran v. Beaty*, 526 F.3d 1340, 1350 (11th Cir. 2008); *see also* J. Garbolino, Fed. Jud. Ctr., *The 1980 Hague Convention on the Civil Aspects of International Child Abduction: A Guide for Judges* 186 (3d ed. 2023) ("In most circumstances, once a child crosses the U.S. border, a court loses jurisdiction to enforce the provision of any orders made regarding the manner or conditions of the child's return."). "Because the court granting or denying a petition for return lacks jurisdiction to enforce any undertakings it may order, even the most carefully crafted conditions of return may prove ineffective in protecting a child from risk of harm." *Baran*, 526 F.3d at 1350. At this juncture, the court finds that Paragraph 9 is not an enforceable condition following the granting of the petition and CFS's return to South Korea.

Federal courts do "continue to have personal jurisdiction over" a winning Petitioner, and "may command [them] to take action even outside the United States, and may back up any such command with sanctions." *Chafin v. Chafin*, 568 U.S. 165, 175 (2013). However, the court finds that Paragraph 9 is not the sort of "action" that the Supreme Court professed

power to command petitioners to "take." The Court in *Chafin* addressed whether an appeal becomes moot by virtue of a petition being granted (and child being returned), finding that such a case remained a live controversy. *Id.* at 173. But the Court acknowledged that "[e]nforcement of [an order to return to the United States pending appeal] may be uncertain if [the petitioner] chooses to defy it, but such uncertainty does not typically render cases moot." *Id.* at 175.

Here, the court is concerned about the length of time Respondent asks Paragraph 9 to be enforced. While the parties jointly informed the court that child custody proceedings are underway in South Korea, they gave no estimate about how long those proceedings might last. In the court's view, the longer Paragraph 9 is imposed, the greater the risk the court goes beyond its narrow duty of resolving the petition under the Hague Convention and ensuring that the child is returned safely back to his habitual residence. After all, ICARA "empower[s] courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." 22 U.S.C. § 9001(b)(4). At this juncture, it is up to the South Korean courts to determine custody of CFS, and the attendant responsibilities and rights of the parents. Accordingly, the court views its role in this matter to be complete at this time.

The court finds that Respondent has not shown by clear and convincing evidence the existence of a "valid decree" in Paragraph 9. As Respondent fails to meet her burden on the first prong, the court need not analyze her claim further.

### IV.  Conclusion

For the foregoing reasons, the court will **deny** the corrected motion for contempt (Dkt. 93).  Additionally, the court will **deny** the original motion for contempt (Dkt. 92) as moot. An appropriate Order shall accompany this Memorandum Opinion.

**ENTERED** this 11th day of August, 2025.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE